IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 1, 2019

## ROSE MARY THOMPSON v. ROBERT BOYD

**Appeal from the Circuit Court for Knox County**
**No. 1-378-17      Kristi M. Davis, Judge**

_____

### No. E2018-01098-COA-R3-CV

_____

A homeowner and a contractor entered into a contract requiring the contractor to repair damage to the homeowner's house caused by a kitchen fire. The repairs to be performed were those covered by the homeowner's insurance policy as outlined in a detailed estimate of repair work. After the contractor abandoned the project, the homeowner hired another contractor to complete the work and sued the original contractor for breach of contract. We affirm the decision of the trial court to the extent of the court's determination that the contractor breached the contract by his undue delay and poor workmanship. We have concluded, however, that the trial court's decision fails to adequately explain the award of damages or to dispose of the contractor's counterclaim. Therefore, we vacate the damages award and remand for more specific findings regarding the basis for the damages award and a disposition of the counterclaim.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Robert Boyd, Knoxville, Tennessee, pro se.

Barbara W. Clark, Knoxville, Tennessee, for the appellee, Rose Mary Thompson.

# MEMORANDUM OPINION[1]

## FACTUAL AND PROCEDURAL BACKGROUND

A kitchen fire on June 5, 2015, caused damage to Rose Mary Thompson's home on Spring Place Circle in Knoxville. Ms. Thompson's insurance company determined that she was entitled to $80,063.55[2] for the repairs. On October 27, 2015, Ms. Thompson entered into a contract with Robert Boyd to perform the repairs.

On October 13, 2017, Ms. Thompson filed a complaint for breach of contract against Mr. Boyd. The complaint includes the following pertinent allegations:

8. The Defendant commenced work shortly after the contract was signed by the Plaintiff on October 27, 2015, and received his first payment draft on November 18, 2015, in the amount of $40,000.00. The Defendant received subsequent payments in the amount of $13,620.30.
9. Throughout the course of the repair project, the Defendant would fail to show up on numerous occasion[s] causing unnecessary delays, and more than 50% of the repair work remains unfinished.
. . . .
11. The work the Defendant did perform was substandard, causing the Plaintiff to seek the service of other contractors to make corrections to his poor quality workmanship.
. . . .
12. The contract for restoration of Plaintiff's residence required the Defendant to restore the residence pursuant to the contract signed by the parties on October 27, 2015. The Defendant did not complete work pursuant to the contract, in a timely workmanlike manner.
13. The failure of the Defendant to complete the restoration work constitutes a breach of contract.

Mr. Boyd answered the complaint, denying the allegations and stating his version of events. He also asserted a counterclaim.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] This figure includes an actual cash value of $67,232.71 and a replacement cash value of $12,830.84.

According to Mr. Boyd's counterclaim, the parties had a meeting on June 25, 2017. At that meeting, Ms. Thompson gave Mr. Boyd a deadline of July 31, 2017, to complete the work, and he told her that he would be focusing on the insurance claims, and not on any additional projects she wanted to be done. The counterclaim further alleges:

> 12. The Defendant notified Wells Fargo Bank [Ms. Thompson's mortgage company] to set up an inspection and updated the progress of work.
> 13. July 5, 2017 the Plaintiff locked the Defendant out of the property 5601 Springplace Circle Knoxville, TN.
> 14. The Plaintiff stated to the Defendant that his service was no longer needed.
> 15. The Defendant spoke to the Plaintiff about retrieving his tools and building materials from her property. Also to set up a time for the Wells Fargo Bank inspector.
> 16. The Plaintiff refused the Defendant['s] requests.
> 17. The Defendant immediately contacted Well[s] Fargo Bank[ ] (mortgage lender) and Capstone ISG [insurance adjuster] to inform them of the situation therefore avoiding any confrontation with the Plaintiff.
> 18. Wells Fargo Bank informed the Defendant that all funds are [frozen] at this time. The Plaintiff and Defendant would have to come up with a mutual agreement before the contract can be closed.
> 19. Plaintiff refused the Defendant['s] requests; therefore the Defendant was forced to take legal action. . . .

Mr. Boyd asserted that the work was 75% complete when he received his second payment from the bank and that Ms. Thompson was responsible for change orders and additional work not included on the insurance repair sheets. He requested the following relief:

> 10. The Plaintiff owes the Defendant $5,000.00.
> 11. Defendant has the 3rd draw left to be issue[d] to him for the amount [of] $13,612.41 from Wells Fargo Bank. The Defendant would have received the full amount if he had completed the remaining work.
> 12. Tools, Materials and Supplies Plaintiff refused to return to Defendant [in the] amount of $6,700.00.
> 13. For actual damages in [the] amount of $25,312.41.
> 14. Punitive Damages of $50,000.00.
> 15. [Breach] of contract in the amount of $25,500.00.
> 16. Defamation of character in [the] amount of $50,500.00.

The case went to trial on June 11, 2018. The record does not include a transcript of the hearing, but it does include a statement of the evidence describing the testimony

presented at trial.  The trial court adopted Ms. Thompson's statement of the evidence as the "fair, accurate, and complete account of what transpired at trial."  According to the statement of the evidence, the trial court heard the following:

<u>Testimony of Rose Mary Thompson</u>

The Plaintiff, Rose Mary Thompson, testified that on or about June 5, 2015, she sustained damage to her home at 5601 Spring Place Circle, Knoxville, TN 37924 because of a kitchen fire.  The loss was timely reported to the Plaintiff's homeowner's insurance and Capstone ISG, an independent adjusting company, compiled a computer report for repairs to be made at a total cost of depreciation of $80,321.12, exclusive of depreciation of $19,625.00 and the $2,500.00 deductible.  A copy of the report was admitted as an exhibit to Plaintiff/Appellee's testimony.

The Plaintiff/Appellee entered into a contract with the Defendant/Appellant, Robert Boyd, on October 27, 2015, to complete the repairs on her home.  Numerous delays caused by the Defendant/Appellant occurred and in July 2017, the parties' relationship totally broke down and Ms. Thompson told Mr. Boyd to stay away from her residence, and solicited the services of another renovation contractor, Mr. Clayton Johnson, to finish the job Mr. Boyd started in October 2015.

Wells Fargo, Plaintiff/Appellee's Mortgage Company was responsible for disbursing the funds to Mr. Boyd after an inspection was performed.  On April 30, 2016, Wells Fargo performed an inspection of the work[  ] performed by Mr. Boyd and found that he had completed 75% of the repairs.  No other inspections were performed.  Much of the work performed by Mr. Boyd was not performed in a workmanlike manner.

For the work performed by Mr. Boyd, he was paid $53,620.30.  The parties agreed to minor changes during the restoration period which the Court considered in the final judgment.

The testimony was undisputed that Mr. Boyd never completed the work he was contracted to perform.

<u>Testimony of Clayton Johnson</u>

Mr. Clayton Johnson, a renovation contractor, inspected the unfinished work and provided a report and took numerous photographs outlining the deficiencies in the work performed by Mr. Boyd.  He testified in details of all items outlined in his report made as an Exhibit to his

testimony regarding the defective workmanship of Mr. Boyd in making the repairs to Ms. Thompson's home. Mr. Johnson testified that the cost to complete the job and correct the defective workmanship is $34,342.00.

### Testimony of Clifford Foster, Sr.

Mr. Clifford Foster was called as a witness by the Defendant/Appellant. He testified that he was a maintenance person who assisted the Defendant/Appellant in moving things out of the way, and did some of the painting during the repair project. He testified that several bundles of [insulation] was never installed, but stored in the basement. The project was started in October 2015, and was still not completed in July of 2017.

### Testimony of Robert Boyd

Mr. Robert Boyd testified to the agreement he had with Ms. Thompson to make the repairs for her fire damage. He admitted that the contract was signed in October 2015, and as of July 2017, he had not completed the project. Mr. Boyd testified that the parties made some changes to the repair order as the job progressed. Mr. Boyd's delay was because he moved his family to Georgia and took several months to renovate a place in Georgia for his family. Mr. Boyd testified that there were several things not completed because of his delay in completing the job. In July 2017, Ms. Thompson told him to stay away, that she would have someone else to complete the work and fix the items he had repaired poorly.

### Testimony of Montecia Boyd

The Defendant/Appellant's wife testified that she was there when her husband guttered [sic] Ms. Thompson's house to make the repairs in 2015 and that she moved to the State of Georgia in 2016 and her husband was in Georgia for several months renovating a home for the family. She testified that prior to her moving, Mr. Boyd would work at the Plaintiff's house overnight until early morning.

After the trial, the court entered an order on June 20, 2018, including the following relevant findings of fact:

4. The Defendant commenced work on the residence and because of numerous delays on the part of the Defendant, the work was never completed.

5. On or about July 6, 2017, the Plaintiff terminated the Defendant's services and solicited the services of another renovation and repair service [owned] by Clayton Johnson to provide an estimate of the remaining work to complete the repairs on Plaintiff's residence.

6. Clayton Johnson provided to Plaintiff a detailed estimate and report of the remaining work. Further, Mr. Johnson provided testimony at trial regarding his report and the Court finds that some of the work performed by the Defendant, Robert Boyd, was not performed in a workmanlike manner, and the Defendant failed to perform some of the repairs.

7. The Court finds that the Defendant was paid a total of $53,620.30 for the work he performed.

8. The estimate provided by Clayton Johnson to complete the repairs on Plaintiff's home, including remediation of work previously done by the defendant in an unworkmanlike manner, is $34,342.06. The estimate, however, includes the installation of an HVAC system at a cost of $5,779.00. Replacement of the HVAC system was not included in the estimate provided by Capstone and the Court finds that the estimate provided by Clayton Johnson must be reduced by the amount of $5,779.00.

9. The Court further finds that the parties entered into change order agreements for some of the repairs with costs of the change orders to be paid by the Plaintiff. The Court finds that the sum of $2,500.00 shall be deducted from the Johnson estimate for the change orders.

The trial court awarded Ms. Thompson a judgment against Mr. Boyd in the amount of $26,063.06 and ordered Mr. Boyd to "retrieve his tools from the Plaintiff's residence with arrangement[s] to be coordinated through Plaintiff's counsel."

On appeal, Mr. Boyd raises twelve issues. We consolidate and restate the issues as follows: (1) Whether the trial court erred in finding that Mr. Boyd breached the contract with Ms. Thompson; (2) whether the trial court erred in awarding damages to Ms. Thompson; and (3) whether the trial court erred in failing to award any damages to Mr. Boyd on his counterclaim.[3]

---

[3] We have concluded that Mr. Boyd waived any of the issues not included in this restatement of the issues. For example, he asserts an issue regarding whether the trial court erred in granting damages to Ms. Thompson because her actions demonstrated bad faith, yet the argument section of his brief does not discuss the issue of bad faith. Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires that an appellant's argument set forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." When a party fails to make an argument regarding an issue, we consider that issue waived. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000).

STANDARD OF REVIEW

With a bench trial, our review is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d); *Gregg v. Estate of Cupit*, No. M2018-00379-COA-R3-CV, 2018 WL 5733289, at *3 (Tenn. Ct. App. Oct. 31, 2018); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424-25 (Tenn. Ct. App. 2005). We review the trial court's legal conclusions with no presumption of correctness. *Nashville Ford Tractor*, 194 S.W.3d at 425. We afford the trial court's credibility determinations great deference because the trial court is able to assess the witnesses' demeanor as they testify. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

ANALYSIS

We begin by noting that Mr. Boyd is a pro se litigant, both at trial and on appeal. This court has applied the following standards when evaluating the claims of pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). We allow pro se litigants some latitude in preparing their briefs and endeavor to "give effect to the substance, rather than the form or terminology," of their court filings. *Young*, 130 S.W.3d at 63.

We must also address the state of the appellate record in this case. Although there was a full hearing before the trial court, there is no transcript of the hearing in the record on appeal. Rather, the record contains the statement of the evidence set forth above.[4]

---

[4] Tennessee Rule of Appellate Procedure 24(c) provides as follows:

> **Statement of the Evidence When No Report, Recital, or Transcript Is Available.** If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, or if the trial court determines, in its discretion, that the cost to obtain the stenographic report in a civil case is beyond the financial means of the

Thus, we have only a synopsis of what occurred at trial. In accordance with Tenn. R. App. P. 24, it is the duty of the appellant to prepare the record and to provide "the appellate court a 'fair, accurate and complete account' of what transpired at the trial level." *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005) (quoting *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993)). The appellee "shares the responsibility for ensuring the appellate court has a complete record." *Id.* (citing Tenn. R. App. P. 24(a), (b), (d)). In this case, the trial court found Ms. Thompson's statement of the evidence to be a complete and accurate account of what transpired at the trial and adopted it.[5]

### I. Breach of contract.

Implicit in the trial court's order awarding damages to Ms. Thompson is a finding that Mr. Boyd breached the contract between the parties. The trial court expressly found that the work was never completed "because of numerous delays on the part of" Mr. Boyd and that remediation by Mr. Johnson was required for "work previously done by the defendant in an unworkmanlike manner." Mr. Boyd argues that Ms. Thompson was at fault in locking him out of the house, thereby preventing him from completing his work. He further asserts that Ms. Thompson was in breach of the contract when she declined to allow Wells Fargo Mortgage to inspect Mr. Boyd's work.

The first party to materially breach a contract "is not entitled to damages stemming from the other party's later material breach of the same contract." *McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990). The trial

---

appellant or that the cost is more expensive than the matters at issue on appeal justify, and a statement of the evidence or proceedings is a reasonable alternative to a stenographic report, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

[5] Tennessee Rule of Appellate Procedure 24(e) states, in pertinent part: "Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive."

court identified the first material breaches in this case to be Mr. Boyd's poor workmanship and delay. *See generally Greeter Constr. Co. v. Tice*, 11 S.W.3d 907, 910 (Tenn. Ct. App. 1999) (discussing contractor's delay and inferior workmanship as factors justifying other party's termination of contract). The evidence does not preponderate against the trial court's finding that much of Mr. Boyd's work was not performed in a workmanlike manner. The trial court credited the testimony of Clayton Johnson, the renovation contractor, who presented a detailed report regarding Mr. Boyd's defective workmanship in repairing Ms. Thompson's home and the cost required to correct the defects. Moreover, Ms. Thompson and Mr. Boyd signed a contract in October 2015. Sometime in 2016, Mr. Boyd moved to Georgia with his family and was gone for several months. By July of 2017, Ms. Thompson's project remained incomplete, and she decided to hire someone else to finish the work. The evidence in the record supports the trial court's finding that Mr. Boyd breached the contract by his undue delay and abandonment of the project.

We find no error in the trial court's determination that Mr. Boyd materially breached the contract with Ms. Thompson.

## II. Damages awarded to Ms. Thompson.

The amount of damages awarded is a question of fact and is, therefore, subject to review under the preponderance of the evidence standard. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007).

In assessing damages, the trial court relied upon the estimate provided by Mr. Johnson in the amount of $34,342.06, which was "to complete the repairs on Plaintiff's home, including remediation of work previously done by the defendant in an unworkmanlike manner." From this amount, the trial court subtracted $5,779.00 for the new HVAC system, which was not covered by the insurance estimate. After this reduction, the cost of completion would be $28,563.06. The trial court deducted another $2,500 from the estimate for change orders to be paid by Ms. Thompson, which would result in a total cost of completion of $26,063.06, the exact amount of the judgment entered by the court against Mr. Boyd in favor of Ms. Thompson. Thus, the trial court ordered Mr. Boyd to pay the entire cost of the project's completion.

We find this result puzzling for several reasons. First, as stated in the trial court's order, the repairs were made "pursuant to the estimate provided by Capstone Independent Adjusting Company at a cost of $80,063.55 with $67,232.71 to be paid as actual cash value and $12,830.84 to be paid as replacement cash value once all work had been completed." Thus, after Mr. Boyd received $53,620.30, insurance proceeds remained in the amount of $26,443.25. There is no accounting in the trial court's order for the unused insurance funds, and no explanation for requiring Mr. Boyd to pay the entire cost of the completion of the project.

Second, Mr. Boyd points out a number of charges in Mr. Johnson's invoices that are not covered by the insurance estimate. For example, the insurance estimate does not cover a new front door (total $600), new gutters around the house ($1,560), or a hardwood floor in the basement (materials $2,300). The trial court subtracted $2,500 for change orders, but that amount does not explain all of the discrepancies between Mr. Johnson's invoices and the insurance estimate. Moreover, the trial court's order does not resolve Mr. Boyd's counterclaim.[6]

On the record before this court, we find the trial court's order inadequate. We affirm the portion of the order finding Mr. Boyd to be the party in breach of the contract. We vacate the remainder of the trial court's decision and remand for further proceedings consistent with this opinion. In particular, the trial court should make specific findings regarding its calculation of the amount of the judgment against Mr. Boyd, the distribution of the remaining insurance proceeds, and the disposition of Mr. Boyd's counterclaim against Ms. Thompson.

CONCLUSION

The judgment of the trial court is affirmed in part and vacated in part, and this matter is remanded with costs of appeal assessed equally against the appellant and the appellee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6] We have determined that, rather than remanding this case for the entry of a final order, the more appropriate course is for this court to waive the finality requirement in accordance with Tenn. R. App. P. 2 and to address all of the inadequacies of the trial court's order prior to remand. *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990); *Hopwood v. Hopwood*, No. M2016-01752-COA-R3-CV, 2017 WL 2964886, at *3 n.4 (Tenn. Ct. App. July 12, 2017).